UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUNE KRUGER,

       Plaintiff,

v.

SECURITAS SECURITY
SERVICES USA, INC., and
PINKERTON, INC.,

       Defendants.

_____/

File No.  5:04-CV-91

HON. ROBERT HOLMES BELL

## O P I N I O N

    Plaintiff June Kruger has filed this co-worker sexual harassment case against her former employer, Defendant Securitas Security Services USA, Inc., and Pinkerton, Inc. (collectively "Securitas"), asserting a violation of Michigan's Elliot Larson Civil Rights Act, MICH. COMP. LAWS § 37.2202, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and various state law tort claims.  Securitas has moved for summary judgment on each of Kruger's claims.  For the reasons that follow, Securitas is entitled to summary judgment in this matter.

I.

    During the incidents that give rise to this complaint, Kruger was employed by Securitas as a security officer.  Kruger began her employment with Securitas in 1998 and at

the time of the relevant incidents was stationed at General Motors Plant 3 in Lansing, Michigan.  Kruger worked as a lieutenant, supervising six to eight other security officers.

Although in her deposition testimony, Kruger makes wide ranging allegations of co-worker hostility and intimidation, her complaint is confined to two specific incidents involving Lieutenant Richard Stierly occurring during December 2002 and January 2003. Stierly worked in the same supervisory position as Kruger, however, he was stationed in General Motors Plant 2, a facility adjacent to Plant 3.  The first incident occurred on December 25, 2002.  While attempting to conduct a uniform inspection of a security officer, Kruger observed Stierly angrily confronting the officer.  After observing the exchange for a few minutes, Kruger interceded.  She requested that Stierly leave the area so that she could discuss the incident with the officer.  After initially leaving, Stierly immediately returned, this time aggressively confronting Kruger.  "He was screaming and yelling at me and telling me I had no right defending my officer."  Kruger Dep. at 61, Exhibit A, Def.'s Br. Summ. J. (Docket #28).  Although Stierly never physically touched Kruger, he waved his hands in her face and restricted her from retreating.  "[He] had his hand in my face, got me up against some steps . . . I couldn't move my feet.  I asked him three times to get out of my personal space . . . He kept waving his hands and his body was up against mine."  *Id*. at 60. Eventually, the confrontation ended without further incident when Stierly left the area.

After Stierly left the scene, Kruger called her supervisor, acting Security Chief Lewis Mire, at home to inform him of the incident.  Mire directed Kruger and the other security

officers who witnessed the confrontation to write up incident reports.  Mire then came to the

plant to collect the reports.  The reports were eventually forwarded to Mire's supervisor.  *See*

Mire Aff. ¶ 3.  Mire also advised Kruger to avoid contact with Stierly.  *Id*. at ¶ 3, Exhibit 1,

March 14, 2005 Hearing Testimony at 55-56 (Docket #31).[1]  In addition, Mire also contacted

acting Security Chief Patrick Shane, Stierly's immediate supervisor, to inform him of the

incident.  Shane Aff. ¶ 3.  Shane, in turn, discussed the incident with Stierly and advised him

to avoid contact with Kruger.  *Id*.

The second incident with Stierly addressed in the complaint occurred shortly after

their initial altercation.  In mid-January 2003, Kruger was informed by her co-workers that

Stierly was circulating nude photographs throughout the General Motors facility.  Stierly also

---

[1]Throughout Kruger's brief she relies upon her testimony during a March 14, 2005 state workers' compensation hearing which encompassed the same incidents at issue in this case.  *See* Exhibit 1, Pl.'s Res. Br. (Docket #31).  Securitas contends that this testimony is inadmissible and should not be considered by the Court.  While at trial it is likely that the transcript of the workers' compensation hearing would be inadmissible hearsay, it is clear that the facts contained in the transcript, based upon her personal knowledge, would be admissible provided that Kruger testifies in court.  A review of the hearing transcript and Kruger's deposition testimony in this case does not reveal any material variance between her testimony at the workers' compensation hearing and her deposition testimony as to the relevant facts in this case.  Although the proffered hearing testimony may not be admissible at trial, the Court can consider it on summary judgment.  *See Perry v. Jaguar of Troy*, 353 F.3d 510, 516 n. 3 (6th Cir. 2003) ("Federal Rule of Civil Procedure 56 requires plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact . . . *The proffered evidence need not be in admissible form, but its content must be admissible*.") (emphasis added) (citing *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)).

told those who viewed the pictures that they depicted Kruger.[2]  Upon learning about the photographs, Kruger notified Mire.  In response, Mire contacted Shane and discovered that Shane was already in the process of investigating the matter.  Mire Aff. ¶ 5, Kruger Dep. at 93-94.  In fact, Stierly himself had notified Shane in early January that he had discovered the photographs on the internet.  Shane Aff. ¶ 4.  At that time, Shane advised Stierly not to disclose the pictures or the website to any co-workers and that, due to the previous incident with Kruger, if he did so, he would be disciplined.  *Id.*

Thereafter, on January 16, 2003, Stierly informed Shane that a rumor was circulating that Stierly had distributed the photographs at work and suggested that they were of Kruger.  *Id.* at ¶ 5.  The following day, after interviewing five security officers who each acknowledged that Stierly had circulated the photographs, Shane suspended Stierly.  *Id.* at ¶ 6-8.  Also on January 17, 2003, Kruger notified John Caudy, an investigator employed by Securitas, that Stierly was circulating the photographs.  Caudy discussed the incident with Shane, discovered that Stierly had been suspended, and informed Kruger of this fact that same day.  Caudy Aff. at ¶ 5-7, March 14, 2005 Hearing Testimony at 57.  After further investigation by Shane, Stierly was terminated on January 22, 2003.  Shane Aff. at ¶ 10, Kruger Dep. at 133-34.  Kruger left her position with Securitas on January 28, 2003 and has

---

[2]There is no dispute between the parties that Kruger was not depicted in the photographs.

since been under the care of a physician for various physical and emotional problems which she attributes to the incidents with Stierly.  March 14, 2005 Hearing Testimony at 31-32.

## II.

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in the favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the non-moving party has the burden of coming forward with evidence raising a triable issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Although the facts are viewed in the light most favorable to the non-movant, they may not rest on the mere allegations of his pleadings.  FED. R. CIV. P. 56(e); *Daniel v. Cantrell*, 375

F.3d 377, 381 (6th Cir. 2004). "A mere scintilla of evidence is insufficient." *Humenny v. Genex Corp.*, 390 F.3d 901, 904 (6th Cir. 2004). Rather, a party with the burden of proof opposing a motion for summary judgment has the burden to come forth with requisite proof to support his legal claim, particularly where he has had an opportunity to conduct discovery. *See Cardamone v. Cohen*, 241 F.3d 520, 524 (6th Cir. 2001).

III.

Kruger asserts a sexual harassment claim under Michigan's Elliot-Larsen Civil Rights Act and Title VII of the Civil Rights Act of 1964 as well as state law intentional tort claims including intentional infliction of emotional distress, assault, and defamation. Securitas seeks summary judgment on each claim. The Court will address each claim separately below.

A.   Sexual Harassment under the Elliot-Larsen Civil Rights Act

Kruger's principal claim is that she was subjected to sexual discrimination in her workplace in violation of MICH. COMP. LAWS § 37.2202(1)(a). Michigan's Civil Rights Act prohibits employers from discriminating against an employee because of sex. MICH. COMP. LAWS § 37.2202(1)(a). Sexual discrimination, under the statute, includes sexual harassment. MICH. COMP. LAWS § 37.2103(i). The statutory definition of sexual harassment includes: "unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions . . . (iii) the

6

conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . ."  MICH. COMP. LAWS § 37.2103(i)(iii).[3]

Thus, in order to establish a prima facie case of a hostile work environment, Kruger must show: 1) the employee belonged to a protected group; 2) the employee was subjected to communication or conduct on the basis of sex; 3) the employee was subjected to unwelcome sexual conduct or communication; 4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and 5) respondeat superior. *Radtke v. Everett*, 442 Mich. 368, 382-83, 501 N.W.2d 155, 162 (1993).

Plaintiff clearly satisfies the first prong.  Indeed, the Michigan Supreme Court has commented that, for purposes of a hostile work environment case, virtually all employees are members of a protected class "because all persons may be discriminated against on the basis of sex."  *Id.* at 383, 501 N.W.2d at 162.  Turning to the second prong, in order to satisfy this element Kruger must show that "but for the fact of her sex, she would not have been the object of harassment."  *Haynie v. State*, 468 Mich. 302, 308, 664 N.W.2d 129, 133 (2003)

---

[3]The definition of "sexual harassment" under § 37.2103(i) also includes situations in which: "(i) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . (ii) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . ."  Sexual harassment that falls into one of these subsections is referred to as *quid pro quo* sexual harassment.  *See Diamond v. Witherspoon*, 265 Mich. App. 673, 684, 696 N.W.2d 770, 777 (2005) (citing *Chambers v. Trettco, Inc.*, 463 Mich. 297, 310, 614 N.W.2d 910, 915 (2000)).  Kruger has not asserted a *quid pro quo* sexual harassment complaint.

7

(quoting *Radtke*, 442 Mich. at 383, 501 N.W.2d at 163) (citation omitted). Securitas contends that she is unable to establish this prong because the incidents involving Stierly were based on her gender and were not sexual in nature.

While a strong argument can be made that the December 25, 2002 confrontation was not based on Kruger's sex, the same cannot be said of the circulation of the nude photographs.[4]  In arguing that this prong is not satisfied as to the photograph incident, Securitas conflates the second and third elements of the prima facie case.  The passage from *Haynie* upon which Securitas relies, addresses the third element (the employee was subjected to unwelcome sexual conduct or communication), not the second.  *See id*. at 312, 664 N.W.2d at 135.  The court in *Haynie* expressly rejected Securitas' argument as to the second prong, "in order to meet the second element, *a plaintiff need not show that the conduct at issue was sexual in nature.* . . ."  *Id*. at 308, 664 N.W.2d at 133 (emphasis added).  In this case, at the very least, Kruger has established that she would not have been the object of the photograph incident, "but for the fact of her sex."  *Id*.  Accordingly, she has satisfied the second element of a hostile work environment case.

The third element requires that Kruger show she was subjected to unwelcome sexual conduct or communication.  *Radtke*, 442 Mich. at 382, 501 N.W.2d at 162.  Securitas again

---

[4]The only evidence regarding the subject of the first confrontation is Kruger's deposition testimony in which she says that the confrontation involved communications equipment, Stierly's anger over her request that he leave the area, and her defense of another security guard.  Kruger Dep. 55-56, 60-61.  There is no evidence that this incident occurred because of Kruger's sex.

asserts that Kruger cannot establish this element because the incidents involving Stierly were not sexual in nature and therefore were not sexual harassment.  *See Haynie*, 468 Mich. at 312, 664 N.W.2d at 136 ("M.C.L. § 37.2103(i), defines 'sexual harassment' as 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature . . . .'  It is clear from this definition of sexual harassment that only conduct or communication that is sexual in nature can constitute sexual harassment . . . .").  As to the December 25, 2002 incident, Kruger has failed to show that this confrontation was in any way sexual in nature.  Kruger's deposition testimony indicates that the December 25, 2002 incident began due to a disagreement between Stierly and another officer regarding communication equipment.  Kruger Dep. at 55-56, 60.  When Kruger intervened, it appears that Stierly became angry that she asked him to leave and that she appeared to be defending the other officer.  Kruger Dep. at 61, March 14, 2005 Hearing Transcript at 20.  Nothing in this confrontation approaches "conduct or communication that is sexual in nature."  MICH. COMP. LAWS § 37.2103(i)(iii).  Indeed, Kruger tacitly recognizes this fact by focusing the discussion of this element on the circulation of the nude photographs, not the initial confrontation with Stierly.[5]  *See* Def.'s Br. at 8 (Docket #29).

Despite Securitas' argument to the contrary, the Court finds that Kruger can satisfy the third element based upon the circulation of the nude photographs.  It cannot seriously be

---

[5]In fact, with the exception of the fifth element addressed below, Kruger focuses her discussion of the prima facie sexual harassment case on the photographs incident.  *See* Pl.'s Res. Br. at 7-9.

argued that nude photographs are not sexual in nature. Further, the evidence, viewed in the light most favorable to Kruger, shows that Stierly had shown the photographs to numerous employees at the General Motors facility and told them that they depicted Kruger. Shane Aff. at 6-9, Kruger Dep. at 85-87, 127-29. The evidence also shows that Kruger received a disk containing the photographs. Caudy Aff. at ¶¶ 8-9, Kruger Dep. at 88. Further, the evidence shows that Kruger did not invite or solicit the circulation of the photographs and was distressed and humiliated by their release. This is sufficient to establish the third element of a hostile environment sexual harassment claim. *See Radtke*, 442 Mich. at 384, 501 N.W.2d at 163 ("The threshold for determining that conduct is unwelcome is that the employee did not solicit or incite it, and the employee regarded the conduct as undesirable or offensive.") (quoting *Burns v. McGregor Elec. Indus., Inc.*, 955 F.2d 559, 565 (8th Cir. 1992) (quotation omitted)).

The fourth element of the prima facie case requires evidence that the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment. *Chambers*, 463 Mich. at 311, 614 N.W.2d at 915 (quoting *Radtke*, 442 Mich. at 382-83, 501 N.W.2d at 162). The determination of whether a hostile work environment existed is determined with reference to "whether a reasonable person, in the totality of the circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile

10

or offensive employment environment." *Radtke*, 442 Mich. at 394, 501 N.W.2d at 167.  It is not disputed that a great number of Kruger's co-workers viewed the photographs.  Further, viewing the evidence in the light most favorable to Kruger, the Court must accept her testimony that this incident resulted in her having to leave work due to health issues caused by the photographs.

While the Michigan Supreme Court has held that a single incident, unless extreme, does not create a hostile or intimidating work environment, *Radtke*, 442 Mich. at 395, 501 N.W.2d at 168 (citing rape and violent sexual assault as two possible single incidents that may create a hostile environment), the Court will assume that such an atmosphere was created in this case.  Accordingly, the Court will assume that Kruger can satisfy the fourth prong of the prima facie case.

The Court now turns to the fifth, and dispositive, element in this case: respondeat superior.  In order to satisfy this element, Kruger must prove that Securitas "failed to take prompt and adequate remedial action upon notice of the creation of a hostile work environment." *Chambers*, 463 Mich. at 312, 614 N.W.2d at 916.  "[A]n employer may avoid liability [in a hostile environment case] 'if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment.'" *Radtke*, 442 Mich. at 396, 501 N.W.2d at 168 (quoting *Downer v. Detroit Receiving Hosp.*, 191 Mich. App. 232, 234, 477 N.W.2d 146, 147-48 (1991)).  The undisputed evidence in this case

11

shows that Securitas did respond promptly when Kruger notified her supervisor of Stierly's sexual harassment.

Prior to the distribution of the photographs in the workplace, Stierly had been warned by his supervisor, Shane, that he was not to bring the photographs to work or mention their existence to co-workers.  Shane Aff. at ¶ 4.  Shane specifically advised Stierly that, due to the previous December 25, 2002 incident with Kruger, if Stierly distributed the photographs he would be subject to discipline.  *Id*.  Further, when Shane was notified that Stierly had disobeyed him and displayed the photographs, Shane suspended Stierly and, within four days thereafter, fired him.  *Id*. at ¶¶ 5-10.

Further, Kruger's own supervisor acted promptly when she first came to him regarding the photographs.  Mire Aff. at ¶ 4-5.  When Mire learned of the incident he called Shane immediately and discovered that an investigation was already under way.[6]  *Id*.  Thereafter, Shane notified Mire that Stirely had been suspended and was subsequently fired.  *Id*. at ¶ 5.  In addition, Kruger acknowledges that on the same day she initially discussed this matter with Mire, she notified John Caudy, a General Motors and Securitas investigator.  Kruger Dep. at 133-34.  According to Caudy, after Kruger notified him of the incident, he discussed the matter with Shane.  Caudy Aff. at 5.  Later that same day, Shane notified Caudy that Stierly had been suspended.  *Id*. at 7.

---

[6]In fact, based upon Kruger's deposition testimony, it appears that Mire called Shane to discuss the incident during the course of his meeting with Kruger.  Kruger Dep. at 93-94.

Kruger has not provided any evidence to rebut the testimony of Mire, Shane, and Caudy regarding Securitas' response to Kruger's complaint about the photographs. Based upon this evidence, the only conclusion that can be reached is that Securitas responded quickly and appropriately when notified of Stierly's sexually hostile actions. When Kruger and Stierly's respective supervisors were notified that nude photographs purportedly of Kruger had been distributed in the workplace, an investigation took place. Shortly thereafter, Stierly was suspended and fired. Kruger acknowledges that this series of events transpired over the course of a week to ten days. Kruger Dep. at 135. That is, from the time that Kruger learned of the circulation of the photographs and notified her supervisors, to Stierly's termination, little more than a week passed by. It is difficult to imagine a more rapid response to such a serious allegation in the employment setting. Accordingly, Securitas acted promptly and appropriately upon notice of the creation of a hostile work environment. As such, Kruger cannot demonstrate one of the necessary elements of a hostile work environment case. Therefore, Securitas is entitled to summary judgment on this claim.

Kruger attempts to satisfy the respondeat superior prong by arguing that Securitas failed to take remedial action against Stierly prior to the photograph incident following the December 25, 2002. In addition, she alleges that Securitas did not investigate and take action against Stierly when he began to follow her around in the workplace. There are at least three reasons why this position is erroneous. First, as stated previously, the December 25, 2002 incident was not based on Kruger's sex and was not of a sexual nature. In order to prevail

13

on a sexual harassment claim such as this, Kruger must show that Securitas failed to respond to a *sexually* hostile environment. *See* M.C.L. 37.2103(i); *Radtke*, 442 Mich. at 387, 501 N.W.2d at 164 ("[T]he purpose of the [Civil Rights] act is to combat serious demeaning and degrading conduct based on sex in the workplace, and to allow women the opportunity to fairly compete in the marketplace."). While Kruger and Stierly did have a confrontation on December 25, 2002, it was not sexual in nature and did not create a sexually hostile work environment.

Second, even assuming Kruger's allegation that Stierly began following her around at work is true, it does not give rise to liability on the part of Securitas. There is no evidence that Kruger ever brought Stierly's "stalking" to the attention of her supervisors. "An employer, of course, must have notice of alleged harassment before being held liable for not implementing action." *Radtke*, 442 Mich. at 396, 501 N.W.2d at 169 (quoting *Katz v. Dole*, 709 F.2d 251, 255 (4th Cir. 1983)).

Third, based on the unrebutted evidence in this case, it appears that Securitas did in fact conduct an investigation of the December 25, 2002 incident. Kruger acknowledges that her supervisor, Mire, came to the General Motors facility hours after the first incident with Stierly. Kruger Dep. at 71-72. Further, there is no evidence to rebut Mire's testimony that he collected incident reports from Kruger and other witnesses and forwarded them to his supervisor. Mire Aff. at ¶ 3. In addition, Shane testified that on December 25, 2002 Mire

14

contacted him regarding the incident.  Shane Aff. at ¶ 3.[7]  Thereafter, Shane told Stierly to avoid contact with Kruger unless it was necessary.  Shane Aff. ¶ 4.  It appears that Kruger's real issue with respect to the December 25, 2002 incident is that, in her opinion, Securitas did not take sufficient action against Stierly after this episode.  *See* Kruger Dep. at 75-76. Kruger, however, has not produced any evidence demonstrating that Securitas had a policy requiring dismissal if such an altercation occurred.  Moreover, Kruger has not rebutted the evidence showing that Stierly was warned that he should avoid Kruger following the December 25, 2002 incident.[8]

Accordingly, Kruger has failed to demonstrate that there is a genuine issue of fact as to whether Securitas promptly and adequately responded to her allegations of sexual

---

[7]Kruger attempts to create a question of fact regarding Mire's response to the December 25, 2002 incident.  Mire's affidavit states that he called Shane and advised Kruger to avoid Stierly.  Mire Aff. at ¶ 3.  Kruger, however, testified that Mire did not pursue an investigation or call anyone because he did not want to bother other employees during the holiday weekend.  Kruger Dep. at 73-74, March 14, 2005 Hearing Testimony at 22.  While this may create a small dispute of fact regarding Mire's affidavit, there is no evidence rebutting Shane's affidavit stating that he did receive a phone call on Christmas Day from Mire and that he discussed the incident with Stierly.  Shane Aff. at ¶ 3.

[8]Even if the Court considered the promptness of Securitas' response from the first incident on December 25, 2002 until Stierly's termination on January 22, 2003, it would find that this was an adequately prompt response.  The undisputed evidence shows that Stierly was told to stay away from Kruger and was told that if he brought the photographs into work he would be subject to discipline.  After Securitas discovered that Stierly had defied this warning, he was suspended and subsequently dismissed.  That is, from the time that Securitas was first notified that Stierly was antagonizing Kruger to his dismissal, less than a month went by.  Even viewed from the date of the first incident, Securitas responded in a prompt and adequate manner.

harassment.   Therefore, Securitas is entitled to summary judgment on Kruger's hostile environment claim.

B.      Sexual Harassment Under Title VII

Kruger also asserts a hostile work environment claim under Title VII, 42 U.S.C. § 2000e *et seq.*  The elements of the prima facie case under Title VII are similar to those already addressed under Michigan's Elliot-Larsen Civil Rights Act.  *See e.g.*, *Radtke*, 442 Mich. at 381, 501 N.W.2d at 162 (noting that the language of the Michigan statute defining sexual harassment "strongly parallels" language adopted by the Equal Employment Opportunity Commission).  The Sixth Circuit has held that:

> [I]n order for a plaintiff to establish a prima facie Title VII claim of hostile environment sexual harassment by a coworker, she must demonstrate that the following elements of the statutory tort are present: (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based upon sex; (4) the harassment unreasonably interfered with the plaintiff's work performance or created a hostile or offensive work environment that was severe and pervasive; and (5) the employer knew or should have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action.

*Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829 -830 (6th Cir. 1999); *see also Farmer v. Cleveland Public Power*, 295 F.3d 593, 604 (6th Cir. 2002).  The first four elements of the prima facie case are substantially similar to the elements of the state law hostile work environment claim and have been adequately addressed above.  Because the fifth element is slightly different under the federal statute, requiring a showing of negligence on the part of the employer, the Court will address it in this section.

Kruger contends that the employer liability element is satisfied in this case because the nude photographs were widely disseminated throughout the workplace and placed in areas open to the public. Kruger reasons that due to the great number of employees who allegedly viewed the photographs, it is reasonable to assume that Securitas should have known about this sexually harassing incident and failed to take remedial action prior to her complaint to her supervisor. Kruger's argument is unavailing. First, her allegation that the photographs were placed in a public area is unsupported by any admissible evidence. At best, it is supported by hearsay. *See* Kruger Dep. at 85 (stating that another employee told her that the photographs had been circulating in the welcome center). Moreover, even if Kruger could show that Securitas knew or should have known of the photographs, she must also demonstrate that Securitas failed to take prompt and appropriate remedial action. *See e.g.*, *McCombs v. Meijer, Inc.*, 395 F.3d 346, 353 (6th Cir. 2005) ("[f]or an employer to be liable for the sexual harassment of an employee by a coworker, the harassed employee must show that the employer *both* (1) knew or should have known of the harassment *and* (2) *failed to take prompt and appropriate corrective action*.") (quoting *E.E.O.C. v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 518 (6th Cir. 2001)). There is no evidence that her employer failed to take prompt and appropriate corrective action.

As set forth above, when the Securitas supervisors were notified of the photographs they responded quickly and appropriately to the situation. In fact, according to Kruger, approximately a week to ten days transpired between the time she learned of the circulation

of the photographs and Stierly's termination.  Kruger Dep. at 135.  In brief summary, Shane was the first supervisor to learn of the existence of the photographs.  Upon being given this information, Shane warned Stierly that he was not to discuss the website or photographs with co-workers and was not to bring the photographs to work.  Shane also advised Stierly that if he failed to comply he would be disciplined.  The following week, Shane discovered that Stierly had disobeyed his order and brought the photographs to work.  During this same time frame, Kruger learned of the circulation of the photographs and notified her supervisor, Mire, who immediately contacted Shane.   After conducting an initial investigation, Shane suspended Stierly and, after completing the investigation, fired him.  There is simply no evidence demonstrating that Securitas' response manifested "indifference or unreasonableness in light of the facts the employer knew or should have known."  *Fenton*, 174 F.3d at 831 (quoting *Blakenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 873 (6th Cir. 1997).[9]  The evidence before the Court shows that, within a matter of weeks, Securitas' supervisors had investigated the complaint and dismissed Stierly.  This was an appropriate and prompt corrective action.  Accordingly, Kruger has failed to establish the elements of a prima facie case of co-worker sexual harassment under Title VII.  Summary judgment in favor of Securitas will be entered on this claim.

---

[9]*Blakenship* has been abrogated on other grounds by *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. Boca Raton*, 524 U.S. 775 (1998).  *See Madeja v. MPB Corp.*, 149 N.H. 371, 821 A.2d 1034 (2003) (noting *Ellerth* and *Faragher* effectively overruled *Blakenship*).

18

C.    <u>State Law Negligence, Intentional Tort, and Defamation Claims</u>

Kruger also asserts various state law tort claims, including negligence, assault, intentional infliction of emotional distress and defamation, against Securitas.

Kruger appears to allege that Stierly's actions during the December 25, 2002 incident and the distribution of the photographs constitute assault, intentional infliction of emotional distress, and defamation.  This allegation against Stierly does little to establish Securitas' liability for the intentional torts of its employee.  Michigan courts have consistently held that an employer is not liable for torts intentionally committed by an employee that are outside the scope of the employment.  *See Salinas v. Genesys Health System*, 263 Mich. App. 315, 317-18, 688 N.W.2d 112, 113 (2004) (collecting cases).  An employer can only be held liable for the intentional tort of his employee if it is committed in the course and within the scope of the employee's employment.  *Bryant v. Brannen*, 180 Mich. App. 87, 98, 446 N.W.2d 847, 852-53 (1989).  Therefore, where an employee is acting "to gratify some personal animosity or to accomplish some purpose of his own," he is not acting within the scope of his employment and his employer cannot be held liable for his actions.  *Id*.  In this case, it is difficult, if not impossible, to conceive a purpose, that serves Securitas, for distributing nude photographs in the workplace or for antagonizing a co-worker.  As such, Stierly was not acting within the scope of his employment and Securitas cannot be held liable for his actions.

Based upon the undisputed evidence in this case, it appears as a matter of law that Stierly's actions were borne out of his personal animosity toward Kruger and that his actions

were not within the scope of his employment.  Accordingly, Securitas is entitled to summary judgment on Kruger's claims of assault, intentional infliction of emotional distress, and defamation.

Moreover, to the extent that Kruger alleges a common-law negligence claim against Securitas for failing to take action against Stierly, such a claim is barred by the exclusive remedy provision of the Michigan Workers Disability Compensation Act., MICH. COMP. LAWS § 418.131(1).  The statute provides in pertinent part: "The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease.  The only exception to this exclusive remedy is an intentional tort." MICH. COMP. LAWS § 418.131(1).  "It is well settled that the exclusive remedy provision applies when an employee is injured by the negligent acts of his employer or by the negligent acts of a coemployee." *Harris v. Vernier*, 242 Mich. App. 306, 310, 617 N.W.2d 764, 767-68 (2000) (collecting cases).  Accordingly, any negligence claim against Securitas is barred by the exclusive remedy provision.[10]

---

[10]Although it is not completely clear, it appears that Kruger also asserts a claim of intentional infliction of emotional distress against Securitas.  Such a claim would also be barred by the exclusive remedy provision because it does not fall under the statutory exception for an intentional tort.  Section 418.131(1) states that: "[a]n intentional tort shall exist only when an employee is injured as a result of a *deliberate act of the employer* and *the employer specifically intended an injury*.  An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge." (emphasis added).  There is no evidence Securitas committed a deliberate act or specifically intended to injure Kruger.  Accordingly, Kruger's claim fails.

20

IV.

For the reasons stated above, Securitas is entitled to summary judgment on all of Kruger's claims.  An order will be entered consistent with this opinion.


Date:   September 30, 2005          /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE

21